# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CARGILL, INCORPORATED                                          CIVIL ACTION

VERSUS

BRETT ANTHONY CLARK, ET AL.                        NO.: 14-00233-BAJ-SCR

## RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 20)** filed by

Plaintiff Cargill, Incorporated ("Cargill"), moving for the Court to find no genuine

issue of material fact, pierce the corporate veil, and hold Defendants Brett Anthony

Clark ("Brett Clark"), Clark Farm #1, LLC ("Clark Farm"),[1] and Squaw Bayou

Farms, LLC ("Squaw Bayou") (collectively, "Defendants") solidarily liable for two

arbitration awards rendered by the National Grain and Feed Association ("NGFA"),

which were confirmed by judicial order in separate cases, in this Court and in the

27th Judicial District Court of Louisiana. Defendants oppose the motion for

summary judgment and further move to strike Exhibits A–L attached to the motion.

(Doc. 23). Plaintiff filed a reply in response to Defendants' opposition. (Doc. 24).

The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Oral argument was

held on July 9, 2015, wherein the Court denied in part and deferred in part

Defendants' motion to strike and deferred the entirety of Plaintiff's motion for

---

[1] In their answer, Defendants noted that the correct name of the named defendant is "Clark **Farms** #1, L.L.C." instead of "Clark **Farm** #1, L.L.C." (Doc. 8 at ¶ II). Absent a formal motion by a party to amend a party name or a caption, the Court refers to parties as they are identified on the docket sheet which, as a default, reflects the naming of parties in the original complaint.

JURY

summary judgment. For reasons explained herein, Defendants' motion to strike is **DENIED** entirely and Plaintiff's motion for summary judgment is **GRANTED**.

## I.    BACKGROUND

In March and April of 2006, Plaintiff Cargill and Defendant Clark Farm entered into two separate contracts (Purchase Contract Nos. 26722 and 26766) for the sale and delivery of bushels of wheat. (See Doc. 1-1 at pp. 1–6). Each contract contained a provision stating that any disputes arising under any grain contract between the parties would be subject to binding arbitration proceedings before the NGFA pursuant to NGFA Arbitration Rules, with judgment of the award to be entered by any court having jurisdiction over the matter. (Doc. 1-1 at pp. 2, 5). The contracts were signed by Defendant Brett Clark on behalf co-Defendant Clark Farm. (Doc. 1-1 at pp. 3, 6). Brett Clark is managing member—the sole member—of Clark Farm, with 100% financial interest in Clark Farm. (Doc. 20-4 at pp. 2–3). Clark Farm failed to deliver on both contracts, where delivery was scheduled between May and June 2008. (Doc. 23-2 at p. 3).[2]

On October 22, 2008, Brett Clark executed the Operating Agreement of Squaw Bayou Farms, LLC ("Squaw Bayou") as the company's sole member. The articles of organization were filed and recorded with the Secretary of State on October 24, 2008. (Doc. 20-11 at p. 28). At the time of organization, Brett Clark was

---

[2] By Defendants' own admission, Clark Farm breached the contracts because at the time of the contracted-for delivery, the market price for wheat bushels was higher than the price that would have been paid by Cargill. "[Clark Farm] chose to pursue the best avenue available to it to satisfy is creditors, lien holders and mortgage holders . . . . It sold its crop for the best price it could get and paid the bills that it could pay with the funds available . . . ." (Doc. 23-3 at pp. 3–4).

listed as the operational manager and sole member of the Squaw Bayou, with 100% membership interest. (*Id.* at p. 29). Also on October 22, 2008, a document was executed, styled "Minutes of Membership of Clark Farms #1, L.L.C." in which Brett Clark, sole member of Clark Farm, stated that the purpose of the Clark Farm was "significantly impaired" and that it desired to sell its used equipment to "Squaw Farms, L.L.C." in a zero-dollar sale, in exchange for Squaw Bayou's assumption of debt on specific agricultural security agreements. (Doc. 20-11 at pp. 23–25).

Cargill cancelled two remaining contracts (Purchase Contract Nos. 27399 and 29492) for the sale of bushels of wheat scheduled to be delivered in 2009, citing the reason for cancellation as Clark Farm's failure to perform on the 2008 contracts; the cancellation notice was via letter dated November 7, 2008. (Doc. 20-4 at p. 12).

The dispute regarding the first two contracts was brought before the NGFA in Arbitration Case No. 2362 against "Clark Farm #1, L.L.C./Brett Anthony Clark." (Doc. 1-1 at pp. 7–9). Clark Farm and Brett Clark failed to respond to the notice of arbitration, and on May 20, 2009, the NGFA entered default judgment in Arbitration Case No. 2362 against "Clark Farm #1, L.L.C./Brett Anthony Clark" in the amount of $127,950.00, with interest to run from the date of judgment until paid in full. (Doc. 1-1 at pp. 7–9). On June 19, 2013, this Court entered judgment confirming the arbitration award in favor of Cargill and against Clark Farm only. (08-cv-00456-JJB-RLB, Doc. 27). The judgment, issued by this Court, specifically stated that the right to proceed to file suit against Brett Anthony Clark and Squaw Bayou Farms for recovery of damages were reserved. (*Id.*). Further, on August 27,

2013, this Court awarded Cargill attorney's fees and costs in the amount of $22,179.13 in connection with the matter concerning Purchase Contract Nos. 26722 and 26766. (08-cv-00456-JJB-RLB, Doc. 32). Cargill contends that, to date, neither Brett Clark nor Clark Farm has paid any amount of this award. (Doc. 20-3 at p. 8). Defendants do not dispute that no amount of this award has been paid. (Doc. 23-2 at pp. 1–2).[3]

On Purchase Contract Nos. 27399 and 29492, Cargill also initiated NGFA arbitration proceedings against "Clark Farm #1, L.L.C./Brett Anthony Clark." Clark Farm and Brett Clark once again failed to respond to the notice of arbitration, and Cargill was awarded a default judgment against both in Arbitration Case No. 2406 on June 6, 2013 in the amount of $6,000 plus interest from the date of judgment until paid in full. (Doc. 1-1 at pp. 21–23).[4] This arbitration award was confirmed on September 18, 2014 by the 27th Judicial District Court of Louisiana, St. Landry Parish in Case No. 14-C-1843, in favor of Cargill and against Clark Farm and Brett Clark. (Doc. 20-10 at pp. 1–2). Defendants here do not dispute that no amount of this second award has been paid. (Doc. 23-2 at p. 2).[5]

---

[3] According to the records of this Court, no appeal was pursued in Civil Action No. 08-00456.

[4] Defendants argue that no delivery was ever due under Contract No. 27399 by virtue of it never having been a valid contract. (Doc. 23-2 at pp. 3–4). Indeed, the copy of that contract furnished in the record is unsigned by any party other than the buyer, Cargill. (*See* Doc. 1-1 at p. 13). Because the contract was the subject of adjudication before the NGFA, however, the Court does not here opine— and need not opine—on the validity of Contract No. 27399.

[5] There is no record evidence or representation by any party that an appeal was pursued in Case No. 14-C-1843.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be genuinely disputed must support the assertion by citing materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" or that an adverse party cannot produce admissible evidence to support the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c).

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    DISCUSSION

### A.    Jurisdiction Over Award from NGFA Case No. 2406

As a preliminary matter, the Court must satisfy itself of its jurisdiction over—in particular—the $6,000 arbitration award from NGFA Case No. 2406, which adjudicated Purchase Contract Nos. 27399 and 29492 and which was confirmed on September 18, 2014 by the 27th Judicial District Court of Louisiana, St. Landry Parish in Case No. 14-C-1843.

"Federal courts, both trial and appellate, have a continuing obligation to examine the basis for their jurisdiction. The issues may be raised by parties, or by the court *sua sponte*, at any time." *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). At oral argument, the Court raised the issue of subject matter jurisdiction over the second award, which totaled $6,000 plus interest. Although all the contracts here are bilateral contracts between Clark Farm and Cargill for the sale and delivery of bushels of wheat, the contracts at issue in the $6,000 judgment were wholly separate from the contracts at issue in the other case in this Court whose judgment Cargill here seeks to enforce, that is, Civil Action No. 08-00456-JJB-RLB. To be sure, the sets of contracts were discrete and unrelated

enough that they could be adjudicated in two separate NGFA arbitrations and subsequently confirmed in two different courts.

Cargill's own memorandum stated that confirmation of this second NGFA award had been sought in the 27th Judicial District Court "[d]ue to jurisdictional issues." (Doc. 20-3 at p. 9). Counsel for Plaintiff clarified that these jurisdictional issues indeed referred to the insufficiency of the amount in controversy for federal diversity jurisdiction. (Oral Argument, 7/9/2015).

Nonetheless, the Court finds here that Plaintiff's claims are properly aggregated in the instant suit. It has been long established that, in determining whether the amount-in-controversy requirement has been met, a single plaintiff may aggregate two or more claims against a single defendant, even if the claims are unrelated. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 585 (2005). *See also Parish of Plaquemines v. Total Petrochemical & Ref. USA, Inc.*, 64 F. Supp. 3d 872, 887 (E.D. La. 2014). As a general matter, claims against two or more defendants can be aggregated for the purpose of obtaining jurisdictional amount, only if they are jointly liable to the plaintiff. *Aetna Cas. & Sur. Co. v. Graves*, 381 F. Supp. 1159, 1163 (W.D. La. 1974).

Here, the crux of Plaintiff's suit is founded in its allegation that all three defendants—Brett Clark, Clark Farm, and Squaw Bayou—are one and the same, and are thus liable *in solido* for the court awards entered against Brett Clark and Clark Farm. Because Plaintiff pleads in good faith that Defendants are jointly and

severally liable to it for the satisfaction of these judicial awards, aggregation to satisfy the amount in controversy is permissible.

Although Plaintiff concedes that the Court would not have subject matter jurisdiction over the second award, standing alone, Plaintiff is free to aggregate unrelated claims. Together, the awards Plaintiff seeks to enforce meet the amount in controversy requirement.[6] To the extent that Defendants might argue that venue is improper for Plaintiff's claims related to the second judicial award in the 27th Judicial District Court—which is not within the geographical jurisdiction of this Court—the Court notes that Defendants have effectively waived their right to challenge venue in this Court by failing to assert a defense of improper venue in their answer, (Doc. 8), or filing an appropriate motion to dismiss. The Court is satisfied of its jurisdiction over the second NGFA award at issue in this matter.

### B.     Claim or Issue Preclusion

At the time of the filing of the complaint in this matter in April 2014, the NGFA award in Case No. 2406 had not yet been confirmed by a court. In September 2014, during the pendency of this suit, the 27th Judicial District Court issued judgment confirming the award of $6,000 plus interest against Clark Farm and Brett Anthony Clark. (Doc. 20-10). Separate from any argument of jurisdiction, Defendants assert that the inclusion of claims regarding the $6,000 arbitration

---

[6] As reviewed *supra*, this Court entered judgment against Clark Farm confirming the NGFA's May 20, 2009 award of $127,950.00 plus interest, and separately awarding $22,179.13 in attorney's fees. The 27th Judicial District Court entered judgment against Clark Farm and Brett Clark confirming the NGFA's June 6, 2013 award of $6,000 plus interest. Hence, the amount in controversy is calculated to be $156,129.10 exclusive of interest, and not including fees and costs sought by Cargill in relation to Arbitration Case No. 2406 and to the instant action.

award is "inappropriate as that particular issue has already be [sic] adjudicated in a Louisiana State Court."[7] Defendants cite not a single provision of law—statute or case—which supports an argument of claim or issue preclusion.

Although the state court has issued a final judgment confirming the award in Case No. 2406, Plaintiff is *not* attempting to re-litigate the claims that gave rise to NGFA arbitration proceedings, but instead is seeking to enforce an unpaid arbitration award by piercing the corporate veil to reach purported alter egos of defendants to the original arbitration. The U.S. District Court for the Southern District of New York addressed the same issue in a persuasive case, *Feitshans v. Kahn*, No. 06 CIV. 2125 (SAS), 2006 WL 2714706, at *5 (S.D.N.Y. Sept. 21, 2006). On highly similar facts, the court in *Feitshans* held that although plaintiffs' claims for *new* damages on claims that had already been arbitrated were barred by *res judicata*, their alter ego claims to enforce the prior award, which had not been satisfied, were *not* collaterally estopped. *Id.* at *4–5. There, the court rejected the defendants' speculative argument that the identical issue of alter ego liability was necessarily decided prior to the issuance of the prior arbitration award. *Id.*

Here, similarly, Defendants have made no showing that the issue of piercing the corporate veil was actually previously adjudicated in arbitration or in

---

[7] Defendants did not place at issue any possible preclusive effect of the confirmation of Arbitration Case No. 2362 by this Court, and indeed the Court would not have been convinced by such an argument. In Civil Action No. 08-00456 of this Court, which forms part of the basis of the instant suit, this Court rendered judgment against Clark Farm only, but specifically reserved Cargill's right to proceed to file suit against Brett Clark and Bayou Squaw Farms [sic] for recovery of damages related to that action. (*See* No. 08-cv-00456-JJB-RLB, Doc. 27). Clearly, the prior ruling and judgment of this Court in No. 08-00546 does not preclude the action brought in this case. *See also Cargill, Inc. v. Clark*, No. CIV.A. 10-487-JJB, 2011 WL 4949015, at *4 (M.D. La. Oct. 18, 2011) (this Court finding meritless a nearly identical argument made by same defense counsel in the instant case, Mr. David Carriere, in factually similar case).

subsequent confirmation by a court. Defendants even admit that neither Clark Farm nor Brett Clark participated in this second arbitration proceeding, resulting in the issuance of a default judgment. (Doc. 8 at ¶ XIV–XVI). Defendants have provided no evidence or substantive argument of claim or issue preclusion that would bar this Court's determination of alter ego liability for Defendants Brett Clark, Clark Farm, and Squaw Bayou—the last of which was not even named as a defendant in the underlying arbitration in question. Thus, Defendants' argument of preclusion has no merit.

### C.    Defendants' Motion to Strike

Before the Court may evaluate Plaintiff's motion for summary judgment on the merits, it must properly define the scope of materials properly under consideration in light of Defendants' motion to strike all summary judgment exhibits. (*See* Doc. 23). Without citation to any legal authority and without explanation, Defendants argue that the information contained in Exhibits A–L is "not admissible by mere attachment of copies and without qualification as expert opinion, authoritative material, and/or affidavits." (*See* Doc. 23 at p. 1). Certainly, under Rule 56, a party is entitled to offer an objection that material cited in a motion for summary judgment cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). In such a situation, the burden is on the proponent to either show that the material is either admissible as presented or explain the admissible form that is anticipated. See Fed. R. Civ. P. 56, Advisory Committee Notes on Rules—2010 Amendment. Plaintiff submitted a reply in which

it detailed the basis for each exhibit and explained the form of each exhibit that would be presented to be admitted at trial. (Doc. 24 at pp. 2–6).

At oral argument, Defendants withdrew in part their motion to strike, with respect to depositions of Brett Clark, found at Docs. 20-4, 20-11. (Oral Argument, 7/9/2015). The Court went on to deny, for reasons read into the record, Defendants' motion to strike commodity trading archive information,[8] government publications, and copies of the NGFA arbitration decisions and court judgments at issue in this matter, found at Docs. 20-5–20-10, 20-15. (Oral Argument, 7/9/2015).

The materials for which Defendants' motion to strike was not denied were those that fell in the category of subpoenas and documents received pursuant to subpoenas, found at Docs. 20-12–20-14. In particular, Defendants' counsel argued that certain checks from Clark Farm's business account with Cottonport Bank could be construed as checks for proper business expenses. (Oral Argument, 7/9/2015) ("The checks themselves are fine; it's the interpretation that opposing counsel applies . . . ."). At oral argument, the Court deferred ruling on whether to strike these subpoenaed materials and ruled that it would take up that particular issue at trial. (Oral Argument, 7/9/2015).

Upon further consideration, however, the Court determines that Defendants' objections to the checks were objections concerning the proper interpretation of whether the checks were written for a business purpose *vel non*. The Court is sufficiently persuaded by Plaintiff's proffer of the anticipated form of subpoenas and

---

[8] The Court noted that at trial, counsel would be given an opportunity to demonstrate that commodity trading information found in the *Wall Street Journal* was inaccurate or unreliable.

subpoenaed documents. (*See* Doc. 24 at p. 6). Particularly in light of the fact that Defendants' arguments at oral argument revolved around the interpretation of the checks as opposed to validity or authentication, the Court hereby **DENIES** Defendants' motion to strike in its entirety. The material shall be within the scope of the Court's consideration for the instant motion for summary judgment, with all reasonable inferences made in Defendants' favor according to the summary judgment standard.

### D. Individual Liability of Brett Clark

#### 1. *Jurisprudential Piercing of the Corporate Veil*

It is well settled in Louisiana that a corporate entity is a distinct legal entity, separate from the individuals who comprise it. *See* La. C.C. art. 24. The exception to this rule is when there is a justification for piercing the corporate veil. "Under Louisiana law, the corporate veil may be pierced under the 'alter-ego' doctrine, where the corporate entity is disregarded to such an extent that the affairs of the corporation are indistinguishable from the affairs of the officer or director." *Tubos de Acero de Mexico, SA v. Am. Int'l Investment Corp.*, 292 F.3d 471, 478 (5th Cir. 2002) (*First Downtown Dev. v. Cimochowski*, 613 So.2d 671, 676 (La. Ct. App. 1993)).[9] Plaintiff argues that the Court should find Brett Clark to be an alter ego of Clark Farm.[10]

---

[9] Plaintiff puts forth the "disregard of the corporate entity" as a legal theory separate and apart from the general alter ego theory, (*see* Doc. 20-3 at pp. 16–19), but has not provided sufficient law or argument to convince the Court that the two are distinguishable in any meaningful way. Indeed, as the alter ego doctrine has been developed in Louisiana case law, the disregarding of the corporate entity is symptomatic of the presence of an alter ego entity.

[10] Plaintiff additionally asserts that Brett Clark may be found liable under a theory of intentional

The factors used to determine whether the corporate veil should be pierced under Louisiana's alter ego test include but are not limited to: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings. *Benco Constr. Servs., Inc. v. AJ's Constr., LLC*, No. Civ. A. 09-cv-286, 2010 WL 724363, at *1 (M.D. La. Mar. 1, 2010); *Riggins v. Dixie Shoring Co.*, 590 So.2d 1164, 1168 (La. 1991).

For purposes of piercing the corporate veil, an LLC is treated as a corporation in Louisiana. *Hollowell v. Orleans Reg'l Hosp., LLC*, 217 F.3d 379, 385 n.7 (5th Cir. 2000). With that in mind, courts recognize that the nature of LLCs, as closely-held entities, limits the weight with which certain factors of the test should be afforded. For example, LLCs "are not required to comply with all of the corporate formalities as rigidly as larger corporations." *McDonough Marine Serv., a Div. of Marmac Corp. v. Doucet*, 694 So.2d 305, 310 (La. Ct. App. 1996). Likewise, "[u]nder Louisiana LLC law, members or managers of LLCs do not have to hold meetings, keep minutes or act through formal resolutions." *ORX Res., Inc. v. MBW Exp., L.L.C.*, 32 So.3d 931

---

and unjustified interference with contractual relations. (Doc. 20-3 at pp. 19–20). The claim of intentional and unjustified contractual interference, first recognized by the Louisiana Supreme Court in *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989), has been construed very narrowly so as to generally limit the claim to just the facts of the *9 to 5 Fashions* case. *See America's Favorite Chicken Co. v. Cajun Enterprises, Inc.*, 130 F.3d 180, 184 (5th Cir. 1997). This Court concurs with its sister district court in the Western District of Louisiana, which has held that the doctrine of tortious interference, which addressed liability of officers of *corporations* in *9 to 5 Fashions*, has not been expanded to apply to managers of LLCs. *See M & D Mineral Consultants, LLC v. Wenting Li*, No. CIV.A. 12-2082, 2013 WL 883689, at *2 (W.D. La. Mar. 7, 2013). Because Brett Clark is the managing member of Clark Farm and Squaw Bayou, which are both LLCs, the tortious interference theory is not applicable here.

(La. Ct. App. 2010). Thus, the presence of certain factors normally indicative of an alter ego must be considered in light of what is reasonable or standard for an LLC.

In arguing that the Court should find Brett Clark and Clark Farm to be alter egos of one another, Plaintiff focuses nearly exclusively on purported commingling of personal and company funds. Because the alter ego test is one that considers the totality of the circumstances, there is no minimum number of factors which must be met. Indeed, at least one Louisiana circuit court has held that commingling of funds can on its own constitute sufficient grounds to pierce the corporate veil, where the trial court found that company funds were used to pay personal expenses and that business affairs were not performed on a corporate footing. *See Morreale v. Morreale*, 10 So.3d 1281, 1285–86 (La. Ct. App. 2009).

The case record before the Court contains 72 pages of bank records from the Cottonport Bank, which Plaintiff asserts are indicative of substantial commingling of funds between Brett Clark and Clark Farm. Brett Clark stated at his deposition that he did not keep his own diary of purchases made by Clark Farm. (Doc. 20-11 at p. 3). As discussed *supra*, the Court deems the Cottonport Bank records proper summary judgment material for consideration, but evaluates them according to the summary judgment standard of viewing facts in the light most favorable to the non-movant and drawing all reasonable inferences in the non-movant's favor.

At oral argument, defense counsel averred that many of the checks were made out for purposes that could be interpreted as either personal or business use. Defense counsel pointed to Wal-Mart as one example of a common payee of checks

from Clark Farm's business account, arguing that Wal-Mart purchases could be legitimate business purchases. (Oral Argument, 7/9/2015). The Court agrees that with a payee such as Wal-Mart, which purveys a wide range of goods, the nature of an expense is unclear from the face of the check; any such ambiguities at this stage of litigation are to be resolved in favor of Defendants.

However, the Cottonport Bank records are rife with instances of commingling that are *not* ambiguous. For example, Check No. 1842, drawn from Clark Farm's account, is written out to St. Thomas Church in the amount of $50.00, with the memo field reading: "July 29 Birthday" and "Masses for Jacob Anthony Clark." (Doc. 20-14 at p. 45). Check No. 1817 from the same business account was paid to the "Ear, Nose, Throat, and Allergy Clinic" in the amount of $70.00. (*Id.* at p. 41). Check 1717 paid $65.00 to "Lisa's Studio of Dance." (*Id.* at 37). Other checks were addressed to payees such as "J.C. Penney," "Stage," and "Aeropostale," "Pizza Hut," and "Piggly Wiggly." (*Id.* at pp. 33, 42). Over $1900 was paid to "St. Joseph School" through Clark Farm's account, a large portion for tuition, (Doc. 20-14 at pp. 26, 41), and some amounts for items such as "sweatshirts" and "Amber's cheerleader uniform," (*see, e.g.*, *id.* at pp. 30, 32, 47).

Despite the fact that Clark Farm is "strictly a farming operation" that farms only corn, soybeans, milo and wheat, (Doc. 20-11 at p. 3), several checks from the Clark Farm account were written to animal and veterinary clinics, (*see, e.g.*, Doc. 20-14 at p. 39, 58, 62, 64).

Brett Clark stated at his deposition that neither he nor Clark Farm had any credit cards while Clark Farm was in existence. (Doc. 20-11 at p. 4). Yet check payments from Clark Farm were made to "American Express" and "Discover" on a frequent basis from 2005 through 2008. (*See, e.g.*, Doc. 20-14 at pp. 1–3, 6, 9, 11, 17–20, 22, 25, 38, 40, 46, 48, 52, 61, 63).

According to his deposition testimony, Brett Clark had the sole signing privilege for Clark Farm's bank account. (Doc. 20-11 at p. 4). Brett Clark further stated that his wife, Annie Clark, was not an employee of Clark Farm. (*Id.* at pp. 4, 11). Yet over eighty Clark Farm checks—totaling over $43,000—were signed by Annie Clark from October 2005 to March 2009. (*See* Doc. 20-14 at pp. 4–62). Annie Clark signed over $5000 worth of Clark Farm checks made out to cash. (*Id.* at pp. 4, 12, 15, 32, 42, 51, 62, 64). The bank records also reflect at least one instance in which Annie Clark simply wrote a check out to herself from Clark Farm's account. (*See* Doc. 20-14 at p. 10).

Further, at oral argument, defense counsel represented that, to his knowledge, the *individual* Brett Clark is paying the property taxes on some land still belonging to Clark Farm by title. (Oral Argument, 7/9/2015).

Defendants deny that the bank records reflect personal expenses of Brett Clark and his family paid by Clark Farm. (*See* Doc. 23-2 at ¶ 13). On summary judgment, the Court draws all reasonable inferences in the non-movants' favor, but the Court emphasizes that *the inferences must be reasonable*. Here, no rebuttal has been offered to counter the evidence reviewed above showing that the Clark Farm

company account was being used for personal expenses. Defendants have presented no explanation for the dozens of checks signed by Annie Clark, who was not an employee, and according to Clark Farm's sole member, did not have signing privileges for the company account. Moreover, Defendants have not offered legitimate business reasons for checks made out to schools, dance studios, grocery stores, and department stores. There has been no attempted justification for credit card payments where neither Clark Farm nor its sole member had a credit card, nor for veterinary clinic payments where Clark Farm was a strictly agricultural operation.

Even making all reasonable inferences in favor of Defendants, the evidence clearly demonstrates that the Clark Farm checking account was being used in significant part for personal expenses over the span of several years. The Court thus concludes that the indisputable evidence of commingling of funds is sufficient to pierce the corporate veil between Brett Clark and Clark Farm.

### 2. *La. R.S. 12:1320 as Interpreted in* Ogea

In their opposition, Defendants rely primarily not on a defense of fact, but one of law, arguing that the corporate veil for Clark Farm cannot be pierced pursuant to La. R.S. 12:1320 and the Louisiana Supreme Court's decision in *Ogea v. Merritt*, 130 So.3d 888, 895 (La. 2013).[11] (Doc. 23-3). In *Ogea,* the court interpreted

---

[11] La. R.S. 12:1320 provides:
    A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.
    B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.

R.S. 12:1320 as a matter of first impression and set forth the general rule that an individual member is not personally responsible for the liabilities of an LLC beyond the member's capital contributions, with only specifically enumerated exceptions in cases of fraud, breach of professional duty, or other "negligent or wrongful act." *Id.* at 897. The Louisiana Supreme Court held that the definitions to the exceptions are "confined to certain circumscribed subjects of the law." *Id.*

Plaintiff does not assert that Defendants' conduct falls within any of the statutory exceptions as defined by the *Ogea* court.[12] Instead it argues that *Ogea* and La. R.S. 12:1320 do not apply because the Supreme Court of Louisiana explicitly left undisturbed the jurisprudential doctrine of piercing the corporate veil—that is, the analysis by which the Court, *supra*, found Clark Farm and Brett Clark to be alter egos. Indeed, the court in *Ogea* specified that it was turning to statutory authority for controlling principles of law because the plaintiff there had not invoked jurisprudential doctrine and the lower courts in that case did not rely on it either. *Id.* at 895. It follows, then, that in the instant case, where Plaintiff has brought suit

---

C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.

D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

[12] Although "fraud" was mentioned in its Complaint, (*see* Doc. 1 at ¶ XXV), Plaintiff did not plead fraud as a cause of action. At oral argument, Plaintiff confirmed that it has abandoned a claim of fraud. (Oral Argument, 7/9/2015).

for the central purpose of piercing the corporate veil, the Court properly adjudicates such a claim according to longstanding jurisprudentially developed principles.

In *Hector v. Mo-Dad Environmental Services*, a Louisiana circuit court similarly noted the limits of *Ogea*'s analysis, attributable to the posture of that particular case which was formed by plaintiff and by the lower courts. *See Hector v. Mo-Dad Envtl. Serv., LLC*, 134 So.3d 133, 137 (La. Ct. App. 2014). The court in *Hector* then proceeded to discuss the factors of the alter ego test and subsequently held that the corporate veil could be pierced, adding: "It appears that these companies were set up to avoid liability, but no efforts were made to treat these companies as separate entities. The avoidance of their responsibility to [the plaintiff] is not what the law intended . . . ." *Id.* at 139–40.

The Court notes that, after *Ogea*, courts interpreting Louisiana law have not been entirely consistent in their approach of determining individual liability of LLC members. In some decisions, courts have looked no further than the statutory framework of La. R.S. 12:1320. *See, e.g., Nunez v. Pinnacle Homes LLC*, 158 So.3d 71, 74 (La. Ct. App. 2014); *Hohensee v. Turner*, No. 2014–CA–0796, 2015 WL 1844385 at *11 (La. Ct. App. April 22, 2015). Yet other decisions reflect that courts maintain their reliance on Louisiana's jurisprudential piercing of the corporate veil. *See, e.g., Medeaa v. K.A.P. Enterprises LLC*, No. 09–1211, 2015 WL 1564876 at *2 (W.D. La. April 7, 2015) ("[I]n remanding the case for us to consider the applicability of *Ogea* to the facts of this case, the Fifth Circuit did not invalidate [jurisprudential] piercing of the corporate veil . . . ."); *Collins v. State Farm Ins. Co*,

160 So.3d 987, 996–97 (La. Ct. App. 2015) (examining evidence of fraud and factors of the alter ego test to determine whether to pierce the corporate veil, without any mention of *Ogea* or R.S. § 12:1320).

Although *Ogea* has undoubtedly established an important statutory framework for resolving questions of personal liability of LLC members, it is also evident that the jurisprudential doctrine of piercing the corporate veil has survived *Ogea*. Hence, the Court maintains its finding herein that Brett Clark and Clark Farm are alter egos of one another, such that Brett Clark is personally liable for the arbitration awards lawfully rendered against Clark Farm.

### E. Liability of Squaw Bayou

In a separate theory of piercing Clark Farm's corporate veil, Plaintiff argues that liability should be extended to Squaw Bayou because Squaw Bayou and Clark Farm are a single business enterprise.[13] The single business enterprise doctrine allows for piercing the corporate veil when "a corporation is so organized and controlled as to make it merely an instrumentality of another corporation." *Green v. Champion Ins. Co.*, 577 So.2d 249, 257 (La. Ct. App. 1991).[14] The single business enterprise doctrine applies with equal force to LLCs as to other corporate entities.

[13] In its memorandum, Plaintiff describes this theory as Squaw Bayou being Clark Farm "reincarnated," citing in support *Roddy v. Norco Local 4–750*, 359 So.2d 957 (La. 1978). (Doc. 20-3 at p. 20). *Roddy* dealt with the affiliation of two labor unions, but for traditional companies or corporations, a more frequently used term by Louisiana courts is "single business enterprise/entity." *See, e.g., Brown v. Auto. Cas. Ins. Co.*, 644 So. 2d 723, 728 (La. Ct. App. 1994), *writ denied*, 648 So.2d 932 (La. 1995). At oral argument, Plaintiff confirmed that when it dubbed Squaw Bayou to be a "reincarnation" of Clark Farm, it was referring to the doctrine of single business enterprise doctrine. (Oral Argument, 7/9/2015).

[14] Defendants' argument regarding *Ogea* is wholly inapplicable to the single business enterprise doctrine. As is clear on the face of the statute, La. R.S. 12:1320 concerns the liability of *individual* members, managers, employees, or agents. Single business enterprise doctrine, on the other hand, is used to find liability for another corporate entity.

*See Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 389 (5th Cir. 2000) (affirming finding that several business entities, including two LLCs, formed a single business enterprise).

"Upon finding that a group of affiliated corporations constitute a 'single business enterprise,' the court may disregard the concept of corporate separateness and extend liability to each of the affiliated corporations to prevent fraud or to achieve equity." *Brown v. Auto. Cas. Ins. Co.*, 644 So.2d 723, 727 (La. Ct. App. 1995). Ultimately, determining whether an affiliated group of entities constitutes a single business enterprise is a question of fact for the trial court to decide. *Town of Haynesville, Inc. v. Entergy Corp.*, 956 So.2d 192, 196 (La. Ct. App. 2007).

"Under Louisiana law, the factors to be considered to determine whether one entity is an alter ego of another or whether two entities are a 'single business enterprise' are similar." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010). In *Green v. Champion Insurance*, the court set forth the following non-exclusive eighteen-factor test to determine whether a group of affiliated entities constituted a single business enterprise:

1. Corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
2. Common directors or officers;
3. Unified administrative control of corporations whose business functions are similar or supplementary;
4. Directors and officers of one corporation act independently in the interest of that corporation;
5. Corporation financing another corporation;
6. Inadequate capitalization ("thin corporation");
7. Corporation causing the incorporation of another affiliated corporation;

8. Corporation paying the salaries and other expenses or losses of another corporation;
9. Receiving no business other than that given to it by its affiliated corporations;
10. Corporation using the property of another corporation as its own;
11. Noncompliance with corporate formalities;
12. Common employees;
13. Services rendered by the employees of one corporation on behalf of another corporation;
14. Common offices;
15. Centralized accounting;
16. Undocumented transfers of funds between corporations;
17. Unclear allocation of profits and losses between corporations; and
18. Excessive fragmentation of a single enterprise into separate corporations.

So.2d at 257–58. These factors do not constitute an exhaustive list. *Id.* at 258. Moreover, no single factor is dispositive on the issue of whether a court may find that multiple entities constitute a single business enterprise. *See id.*

Here, Brett Clark is the sole member, manager, and employee of both Clark Farm and Squaw Bayou. (Doc. 20-11 at pp. 23, 29). On October 22, 2008, Brett Clark executed Squaw Bayou's Operating Agreement. (Doc. 20-11 at pp. 29–31). That same day, an agreement was executed between Clark Farm and Squaw Bayou to sell Clark Farm's equipment to "Squaw Farms, L.L.C.," for zero dollars, in exchange for the assumption of debt on specific agricultural security agreements. (Doc. 20-11 at pp. 23–25). In a document of minutes signed by sole member Brett Clark, Clark Farm stated that it was unable to continue operations, and it suspended its farming operations "pending an improvement in the economic condition of the limited liability company." (Doc. 20-11 at p. 23).

Pursuant to the purchase, Squaw Bayou uses the same farming equipment Clark Farm had used in its farming operations. (Doc. 20-11 at p. 10). Squaw Bayou farms the same land as Clark Farm did, with the exception of some land that Clark Farm had lost. (Doc. 20-11 at p. 11). Brett Clark drives a "farm pick-up" truck owned by Clark Farm, for which Squaw Bayou makes insurance payments. (Doc. 20-11 at pp. 18–19).

Further, the Cottonport Bank records show that a check from Clark Farm's account was made out to the Secretary of State in 2005, the memo field reading: "Squaw Bayou H.C. LLC." (Doc. 20-14 at p. 7). Such a record, though it predates Squaw Bayou's filing of its articles of organization with the Secretary of State in 2008, constitutes evidence tending to show that Clark Farm caused the incorporation of Squaw Bayou.

Plaintiffs have not shown that all single business enterprise factors are satisfied—nor must they. Certainly, some factors remain neutral due to a lack of evidence in the record. Regarding undercapitalization, Squaw Bayou's Operating Agreement did not specify the amount of money with which the LLC would be capitalized. (*See* Doc. 20-11 at pp. 29–30). Brett Clark does not recall if anything was paid for the initial capitalization of Squaw Bayou. (Doc. 20-11 at pp. 8–9). Defendants noted at oral argument, and the Court agrees, that there is no specific requirement of a minimum capitalization amount for LLCs. (Oral Argument, 7/9/2015. Although the Court can find no affirmative evidence of

undercapitalization in the record, Defendants do not provide any evidence showing that Squaw Bayou was sufficiently capitalized.

Similarly, there is no evidence in the record clearly cutting one way or another for whether Squaw Bayou was non-compliant with corporate formalities. As defense counsel noted, there is no statutory requirement to hold member meetings, and any such requirements would not be practical for a single-member LLC. (*See* Oral Argument, 7/9/2015).

Nonetheless, the undisputed evidence in the record, even when viewed in the light most favorable to Defendants, shows that Clark Farm and Squaw Bayou are a single business enterprise. The two LLCs, which share a sole manager and member and a sole employee, farm on essentially the same land, using farm equipment transferred from one to the other in a zero-dollar sale. One LLC pays insurance on a truck owned by the other. And bank records indicate that one was directly responsible for the incorporation of the other. Some factors of the test remain neutral, but Defendants have not identified any evidence in the record with a tendency to show that Clark Farm and Squaw Bayou are *not* a single business enterprise. Accordingly, the Court finds that the corporate veil of Clark Farm may be pierced on other grounds, this time to render Squaw Bayou to be the same business enterprise as Clark Farm, and to hold Squaw Bayou liable for the arbitration awards lawfully rendered against Clark Farm.

IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 20)** filed by Plaintiff Cargill, Incorporated is **GRANTED**. The Court has pierced the corporate veil, finding both Defendants Brett Anthony Clark and Squaw Bayou Farms, LLC liable for National Grain and Feed Association arbitration awards rendered and confirmed against Defendant Clark Farm #1, LLC.

Cargill is advised to file a separate motion for costs and attorney's fees.

Baton Rouge, Louisiana, this __7th__ day of August, 2015.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**